UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KIMBERLY M. S.,[1]

                                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

**DECISION AND ORDER**

1:20-cv-615–JJM

_____

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final determination of defendant Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [11, 12].[2] The parties have consented to my jurisdiction [14]. Having reviewed their submissions [11, 12, 13], the Commissioner's motion is granted, and plaintiff's motion is denied.

**BACKGROUND**

The parties' familiarity with the 618-page administrative record [10] is presumed. On June 5, 2017, plaintiff protectively filed an application for disability insurance benefits. Administrative Record [10], pp. 15, 96.[3] Plaintiff's claim was initially denied. Id., p. 15.

---

[1] In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2] Bracketed references are to the CM/ECF docket entries. Unless otherwise noted, page references are to CM/ECF pagination (upper right corner of the page).

[3] Page references to the Administrative Record refer to the page numbers reflected in the Administrative Record itself (bottom right corner of the page).

Administrative Law Judge ("ALJ") Stephen Cordovoni conducted a hearing (id., p. 15, 27), and then issued a Notice of Decision denying plaintiff's claim. Id., pp. 12-27.

## ANALYSIS

### A. Standard of Review

"'In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard.'" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012); see 42 U.S.C. § 405(g). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "means - and means only - 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'". Id. (quoting Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938)). An adjudicator determining a claim for disability benefits employs a five-step sequential process. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. See Talavera, 697 F.3d at 151.

### B. Did the ALJ fail to properly evaluate Nurse Practitioner Kligour's opinion?

Plaintiff argues that the ALJ failed to properly evaluate the medical source statement of psychiatric mental health nurse practitioner ("NP") April Kilgour, PMHNP-BC. Plaintiff's Brief [11-1], pp. 1, 15-23. Plaintiff argues that, in formulating her residual functional capacity ("RFC"), the ALJ failed to account for or sufficiently explain his treatment of several

significant limitations raised by NP Kilgour. Id. The Commissioner argues, conversely, that the ALJ did consider those alleged limitations and adequately addressed them, either by citation to record evidence or by incorporating them into his "very restrictive" RFC determination. Commissioner's Brief [12-1], pp. 17-21. I agree with the Commissioner.

Initially, I note that "the regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017". Michelle K. v. Commissioner of Social Security, 2021 WL 1044262, *3 (W.D.N.Y. 2021).[4] "Pursuant to the new regulations, the Commissioner 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources.'" Id. at *3 (*quoting* 20 C.F.R. §404.1520c(a)). "Instead, the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors'." Andrew G. v. Commissioner of Social Security, 2020 WL 5848776, at *5 (N.D.N.Y. 2020) (*quoting* §404.1520c(a)-(c)). However, "slavish recitation of each and every factor" is not required "where the ALJ's reasoning and adherence to the regulation are clear". Atwater v. Astrue, 512 Fed. App'x 67, 70 (2d Cir. 2013) (Summary Order)

While the regulations previously did not consider a nurse practitioner to be an "acceptable medical source" authorized to render a "medical opinion" (*see*, *e.g.*, Merritt v. Commissioner of Social Security, 2016 WL 6246436, *7 (W.D.N.Y. 2016)), that is no longer the case. See § 404.1502(a)(7); Cherry v. Commissioner of Social Security, 813 Fed. App'x 658, 661 (2d Cir. 2020) (Summary Order). Rather, "the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical

---

4     Plaintiff's claim was filed on June 5, 2017. Administrative Record [10], pp. 15, 96.

-3-

opinion". Andrew G., 2020 WL 5848776, at *5 (*quoting* §404.1520c(a), (b)(1)).  Nonetheless, "the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions'." Id. at *5 (*quoting* §404.1520c(a), (b)(1)).  Ultimately, "the ALJ's conclusion need not perfectly correspond to any one medical assessment as long as it is supported by the record as a whole". Tricarico v. Colvin, 681 Fed. App'x 98, 101 (2d Cir. 2017) (Summary Order).

NP Kilgour, who treated plaintiff since at least June of 2016 (*see* [10], p. 305), completed a treating medical source statement, in which she listed plaintiff's diagnoses as bipolar disorder, post-traumatic stress disorder, and attention deficit disorder. Id., p. 443.  NP Kilgour described her clinical findings of plaintiff to be "[t]earful, [c]rying, [a]nxious". Id. She indicated that plaintiff's "signs and symptoms" included "generalized persistent anxiety", "mood disturbance", "difficulty thinking or concentrating", "recurrent and intrusive recollections of a traumatic experience", "emotional withdrawal or isolation", "recurrent severe panic attacks", and "persistent irrational fear of" a certain unidentified "object, activity, or situation". Id., pp. 444-45.  She also indicated that these conditions exacerbated her physical symptoms, stating further that her "[m]igraines are triggered by anxiety [and] depression". Id., p. 446.

Regarding plaintiff's mental abilities and aptitudes, NP Kilgour checked the box for "seriously limited" with respect to plaintiff's abilities to "remember work-like procedures", "maintain regular attendance and be punctual within customary, usually strict tolerances", "sustain an ordinary routine without special supervision", "complete a normal workday and workweek without interruptions from psychologically based symptoms", "perform at a consistent pace without an unreasonable number and length of rest periods", "ask simple questions or request assistance", "accept instructions and respond appropriately to criticism from

supervisors", "get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes", "respond appropriately to changes in a routine work setting", "deal with normal work stress", "understand and remember detailed instructions", "carry out detailed instructions," and "set realistic goals or make plans independently of others". [10], pp. 445-46. NP Kilgour checked the box for "unable to meet competitive standards" with respect to plaintiff's abilities to "work in coordination with or proximity to others without being unduly distracted", "deal with stress or semiskilled and skilled work", "interact appropriately with the general public", "travel in unfamiliar place", and "use public transportation". Id. She also indicated that plaintiff would be absent from work more than four days per month. Id., p. 447.

In his decision, the ALJ expressly noted each of these alleged limitations. [10], p. 24. He found that NP Kilgour's opinion was "predominantly consistent with the medical evidence of record, the claimant's testimony, and the residual functional capacity expressed [herein]." Id. He did, however, take issue with NP Kilgour's statement that plaintiff would be absent four or more days per month, finding that portion of the opinion to be "inconsistent with claimant's statements and in excess of her stated conditions". Id. In support of this finding, he noted plaintiff's testimony that, despite her feelings of isolation and occasional panic attacks, she was able to complete her activities of daily living, such as managing her household and taking care of her 11-year-old daughter. Id., pp. 24-25. He also noted reports by NP Kilgour indicating that plaintiff appeared well-groomed with normal speech and perception, that - despite an anxious mood - she exhibited "goal-directed" thought process with good concentration and fair insight and judgment, and that her mental health symptoms were managed with medication. Id. 23; see Salmini v. Commissioner of Social Security, 371 Fed. App'x 109, 112 (2d Cir. 2010)

(Summary Order) (the court may look to "other portions" of the ALJ's decision in search of substantial evidence).

The ALJ crafted a fairly restrictive RFC for plaintiff, finding that she was able to perform "light work" (with some exceptions) in a "low stress work environment", free of loud noises or intense artificial light, in which she would perform only simple unskilled work with no supervisory or decision-making duties, no quotas, and only minimal changes to her work routine. [10], p. 20. She could "never" participate in "telephone work, unfamiliar travel, or public transportation". Id. She could endure only "occasional" interaction with a supervisor or co-workers, and only "incidental" interaction with the general public. Id. She could not perform cooperative work. Id. She would be off task for five minutes or less per hour to adjust her posture or for inattentiveness. Id. The ALJ then found, based on the testimony of a vocational expert, that a person with such limitations could perform jobs that exist in the national economy such as mail room clerk, stock checker, and cleaner/housekeeper. Id., pp. 26, 73-74.

Contrary to plaintiff's assertions, it appears to me that the ALJ's RFC determination accounts for each of the limitations indicated by NP Kilgour - with the exception of her opinion that plaintiff would be absent more than four days per month, for which the ALJ explains his departure. Id., pp. 24-25. Plaintiff takes issue with the ALJ's explanation for this departure (*see* [11-1], p. 19); however, it is not the court's place to decide whether the evidence cited by the ALJ on any particular point is compelling. Rather, the court's inquiry is limited to whether such evidence exists in the record and whether it is reasonably susceptible to the ALJ's interpretation. *See, e.g.*, McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014). Here, the ALJ found this alleged limitation inconsistent with the plaintiff's statements that she was able to manage her affairs on an everyday basis, implicitly without needing to take any days off. *See*

[10], pp. 23, 24. This was a conclusion that the ALJ was entitled to draw. *See* Medina v. Commissioner of Social Security, 831 Fed. App'x 35, 36 (2d Cir. 2020) (Summary Order) ("[t]he ALJ observed that [the medical source's] assessment of [the plaintiff's] limitations was inconsistent with [the medical source's] treatment notes and [the plaintiff's] self report of her activities of daily living").

Plaintiff also takes issue with the ALJ's interpretation and/or articulation of another limitation raised by NP Kilgour. Kilgour indicated that plaintiff was "unable to meet competitive standards" with respect to her ability "work in coordination with or proximity to others without being unduly distracted". Administrative Record [10], p. 445. The ALJ, through his RFC formulation, appears to have interpreted that to mean that plaintiff "could not perform team, tandem, or codependent work" and could "endure only occasional interaction with a supervisor or co-workers" and "only incidental interaction with the general public". Id., p. 20. The ALJ's interpretation and/or articulation of this limitation does not strike me as unreasonable, particularly on this record.

Ultimately, it is the ALJ, and not any medical source, who is responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2) and §§ 416.946(c), 416.927(d)(2). "[O]nce an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Brault v. Commissioner, 683 F.3d 443, 448 (2d Cir. 2012). Again, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld". McIntyre, 758 F.3d at 149. This is also not a case, as argued by plaintiff, where the ALJ merely "ignore[ed] . . . significant defects" raised by a medical source. Matthews v. Commissioner of Social Security, 2018 WL 4356495, *3 (W.D.N.Y.).

Finally, the vocational expert's response to a different hypothetical, based on an interpretation/articulation of "work in coordination with or proximity to" limitation that was not adopted by the ALJ, is of no consequence. *See* Dumas v. Schweiker, 712 F.2d 1545, 1554 n. 4 (2d Cir. 1983); Wavercak v. Astrue, 420 Fed. App'x 91, 95 (2d Cir. 2011) (Summary Order) ("[b]ecause we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject [plaintiff's] vocational expert challenge").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings [12] is granted, and plaintiff's motion [11] is denied.

**SO ORDERED**.

Dated: June 23, 2021

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge